[No. 6442. Decided November 14, 1906.]

CHRIST LOSNES, *Respondent*, v. J. LeRoy AND GREAT
NORTHERN RAILWAY COMPANY, *Appellants*.[1]

MASTER AND SERVANT—INJURY TO CAR REPAIRER—CONTRIBUTORY NEGLIGENCE—FAILURE TO DISPLAY SIGNAL. A car repairer who was injured while working between two cars, by reason of the coupling on of a switch engine, is guilty of contributory negligence precluding a recovery, where he failed to protect his position by displaying a blue flag in accordance with the rules and custom of the company, with which he was familiar.

Appeal from a judgment of the superior court for King county, Tallman, J., entered April 28, 1906, upon the ver-

[1]Reported in 87 Pac. 502.

dict of a jury rendered in favor of the plaintiff, after a trial on the merits, in an action for personal injuries sustained by a car repairer. Reversed.

*L. C. Gilman* (*B. O. Graham,* of counsel), for appellants.

*John E. Humphries, Geo. B. Cole,* and *John C. Murphy,* for respondent.

Dunbar, J.—This is an action for damages for personal injuries. Plaintiff was in the employ of the defendant company as a car repairer, and was informed by the foreman that a casting would arrive during the day from Interbay, which should be placed upon the end of a car standing upon track No. 4, and was directed by the foreman to secure said casting upon its arrival and bolt it in place upon said car. Upon the arrival of the casting, the plaintiff, who had been engaged in making some repairs upon a car standing on track No. 3, a parallel track and near track No. 4, left the place where he had been making such repairs and placed himself between a baggage car and a mail car which were coupled together on track No. 4. One of the switch engines operating in the yard passed onto track No. 4 and backed down against one of the cars under which plaintiff was working, thereby squeezing plaintiff's head between the buffer irons on said car, and causing the injury complained of. The cause was tried to a jury, and a verdict was rendered in favor of plaintiff for $15,000. Upon motion for a new trial, the court indicated that he would grant the motion unless the plaintiff would remit the sum of $7,000. This modification was accepted by the plaintiff, and judgment was entered for $8,000. From this judgment this appeal was taken.

Numerous errors are assigned by the appellants, which we have not found it necessary to pass upon, in view of the fact that it appears conclusively from the record that there was no proof that the appellants were guilty of negligence, and it

does appear as conclusively that the respondent was guilty of
contributory negligence which was the proximate cause of the
injury.    The following rule was introduced in evidence:

"A blue flag by day and a blue light by night, displayed at
one or both ends of an engine, car or train, indicates that
workmen are under or about it.    When thus protected it must
not be coupled to or moved.    Workmen will display the blue
signals and the same workmen are alone authorized to remove
them.    Other cars must not be placed on the same track so as
to intercept the view of the blue signals without first notifying
the workmen."

The undisputed testimony in this case is to the effect that
this rule was in effect at the time, and had been for a long time
prior to the time when the respondent was injured; and while
the respondent testified that this rule had never been read to
him or made known to him, his testimony as a whole con-
clusively shows that he was familiar with the rule, and that he
governed his actions while repairing cars in accordance with
the terms of the rule.    He had been working as a car repairer
for twenty-four years, and for the appellant company for sev-
eral months.    He testified that the engine came in fifteen min-
utes earlier than it was expected that day, and that he thought
he was going to get through before the engine came in, which
was evidently the reason that he did not take the flag from
track No. 3 where he was repairing, and place it on track No.
4 where he was at work when he was injured.    It is true that
he testified that he had no notice, while he was working there,
that the engine was going to be backed in against the car,
and that it was the usual custom when he was at work there
for the brakeman to notify him when the train was coming
in.    His testimony on direct examination in this regard was
as follows:

"Q.    What was the usual custom when you were at work
there of notifying you when a train was coming in?    A.    Yes,
the brakeman come and tell me all the time when they were go-
ing to take the cars out all the time.    Q.    Did he come this
time and tell you?    A.    No."

But his subsequent examination shows that he understood that the brakeman would come and tell him when the brakeman was notified that there was a repairer at work, by seeing the blue flag upon the train if in the daytime, or the blue light at night, as shown by the following excerpt from the testimony:

"When the brakeman would come down with the switch engine for some cars, if he found your blue flag out on the end of some cars, then he would come around and tell you that he was going to couple up? A. Yes, and one fellow named Brown tell me—he come out and took the flag off. I ask him what he was going to take the flag off for; he had no right. Q. You knew he had no right to take the flag off from the string of cars? A. Yes. Q. You knew that the only man who had a right to take it off was the man who put it up? A. Yes. Q. But that was some other time; it wasn't this time? A. No. Q. Your flag was over on track 3 where you had been working in the morning? A. Yes. Q. And when, the brakeman did notify you that they were going to come in with the engine, it was only when you had your blue flag out on the end of your cars—then he would come around and tell you that he was going to couple on? A. Yes, when I had my blue flag out, he will tell me."

So that it seems that the respondent did not rely upon the brakeman telling him when the engine was going to couple on in the absence of the blue flag appearing, and that he also knew that the man who was doing the repairing, and no one else, had a right to take the flag down. Again, in cross-examination he said:

"Q. You knew there was nothing to warn a trainman when he was coming down with an engine and you were under the car or between the cars, unless you had your flag out? A. Yes. Q. You knew that? A. Yes."

Then upon redirect examination he testified:

"Q. But before this the brakeman would always come to tell you before they would run in there? A. Always, that is so. Q. And you depended upon that? A. Yes, that is so."

There was a great deal of direct and redirect examination, with the evident intention of trying to get the witness to ex-

plain away this direct statement, but the attempt was unsuccessful, and it appeared all the time that, when the respondent testified that he relied upon the notice of the brakeman, he did not expect the brakeman to notify him unless the flag was at the end of the train as he had so frequently testified. He also testified that he had always put his flag out when he worked under the car, and that the reason why he had not put it out at this time was that he would have to walk the length of a few cars to get the flag from No. 3 to put it onto No. 4, and that he thought he could finish the job before the engine came; that he knew what the flag was for, and that he put it there to warn the trainmen that there was going to be workmen under the car and between the cars; and that if he did not put it there, there would be nothing to warn the trainmen that there was going to be anyone under or between the cars. It is true he testified that he had asked for two flags, presumably to save him from walking the length of a few cars to get the flag, his testimony in that regard being as follows:

"Q. Why didn't you take that flag from track No. 3 and put it on track No. 4? A. Pretty near a block I had to walk down after that flag. Q. It was pretty near a block you had to go to get that flag in order to bring it over and put it on that track that you were working on? A. Yes, I thought I would be done before the train come. Q. You thought you were going to get your little job you had on No. 4 track done before the engine came in there, and that was the reason you didn't go down there a block and get your flag and put it on the track? A. I would be too late. Q. That is the reason you didn't go and get the flag off of track No. 3 and put it over on No. 4, because you thought you would be through before the engine came? A. Yes."

Redirect:

"Q. When you were working on both tracks you only put the flag on one? A. Yes. Q. And they knew you were working on the one track? A. Yes. Q. And this day it was on the one track? A. Yes."

The only inference that could be drawn from this statement on the redirect examination was that the brakeman would take notice that there were workmen working on the track only when the flag was displayed; and while it might have been a little more inconvenient for respondent to walk to the end of the train and get the flag, which he knew according to his own testimony was the only protection he would have against the engine backing down against the train upon which he was working, it was his imperative duty to protect himself against accidents in the manner prescribed by the rule and the customs in that yard with which he was confessedly familiar. Having neglected the safeguards which were provided for him by the company, and having taken chances on his judgment in relation to the time it would take him to do the work, and the time when the engine would probably arrive, he must abide the consequences of the mistake that he made. The company had furnished an efficient protection for him, if he saw fit to avail himself of it. This was a reasonable rule and an efficient one when it was obeyed. There was some attempt to show that the servants of the company could have seen the danger in which this man was placed, and ought to have seen it under the circumstances, and have refused to back the engine down onto the train on which he was working, notwithstanding his failure to place the signal on the train. But we think there is no testimony in the record which will justify this assumption.

At the close of respondent's testimony the appellants moved for a nonsuit, which was refused by the court. This nonsuit ought to have been granted; for, considering the testimony of the respondent alone, no cause for damages was proven against the appellants.

The judgment will be reversed and the cause dismissed.

CROW, FULLERTON, HADLEY, and ROOT, JJ., concur.

MOUNT, C. J. and RUDKIN, J., took no part.